A93A1014. HILLMAN v. GENERAL MOTORS ACCEPTANCE
CORPORATION et al.
(437 SE2d 803)

ANDREWS, Judge.

On October 26, 1991, Hillman filed a compliant against General Motors Acceptance Corporation ("GMAC") and Kurt Hertwig, a GMAC employee, based on events arising out of a vehicle installment contract which she entered into in September 1989. The vehicle on which the contract was based was repossessed on November 5, 1990.

Hillman filed the complaint setting forth counts for wrongful repossession, conversion, fraud and estoppel. Although she conceded that the installment contract required payments on the third of each month, she claimed that GMAC routinely accepted late payments from her, which constituted a mutual departure from the payment terms of the contract and required written notice of strict compliance with the contract before repossession. She claimed that she was disabled in October 1990, and that she forwarded disability claim forms, pursuant to her disability insurance policy, to her insurer throughout that month. She asserted that she spoke with GMAC representatives throughout October and was assured by them that the company would wait for payment from the insurer. Hillman claimed that no mention of default or of repossession was made during the October

conversations. Nevertheless, her vehicle was repossessed on November 5.

Hillman's complaint sought compensatory and punitive damages for the wanton and oppressive manner in which defendants handled her account. GMAC counterclaimed for the deficiency which resulted after disposition of the vehicle.

Defendants filed a motion for summary judgment as to the entire complaint and as to the punitive damages claim, arguing that GMAC's acceptance of two late partial cash payments was insufficient to constitute a mutual departure from the payment terms. Defendants claimed that GMAC's handling of the account did not excuse Hillman's past due September, October and November installments and that the repossession was conducted properly. They contended that two written notices and various telephone inquiries were made to Hillman in October regarding her past due account. Although Hillman paid the outstanding August balance on October 10, 1990, she did not pay the September and October amounts. GMAC stated that it received a copy of a letter dated October 10, 1990 to Hillman from the disability insurer advising her that there were no outstanding claims for payment of further benefits at that time. Accordingly, on November 5, GMAC repossessed the vehicle.

In response to the motion for summary judgment, Hillman submitted several affidavits, including her own. She stated that she never received a notice of default and that her account was subject to special handling since she was disabled. She claimed that in every conversation with GMAC, company representatives assured her that they would wait for the insurer's payment for the balance. Hillman claimed that GMAC did not mention default or repossession in these conversations. She swore that upon finding out that no disability claim was pending, on November 2, 1990, she forwarded a verified claim for disability to the insurer. It was undisputed that a payment from the insurer reached GMAC after the repossession. After the repossession, Hillman contacted GMAC regarding personal property which was in the vehicle, which property was never returned to her.

The trial court granted the motion for partial summary judgment on November 17, 1992. While the court ruled that an issue of fact remained regarding the substance of the complaint, it concluded that no issue of fact remained regarding punitive damages.

In her sole enumeration of error, Hillman argues that the trial court erred in granting summary judgment on the punitive damages claim. First, she argues that the trial court applied an erroneous standard regarding the Georgia law on punitive damages. Secondly, Hillman argues that the trial court erred in finding that the evidence of fraud was insufficient as a matter of law to support an award of punitive damages. Citing several cases including *Maddox v. Brown,* 200

Ga. App. 492 (3) (408 SE2d 719) (1991), she claims that fraud can be inferred from the evidence that GMAC representatives assured her that the company would wait for payment and that her claim for punitive damages was proper. Finally, Hillman contends that summary judgment was improper because there was evidence of GMAC's violations of its own internal policies. Without reference to specific violations, Hillman argues that because GMAC violated its own policies, a jury could conclude that GMAC behaved with reckless disregard for the rights of debtors.

Hillman's arguments are without merit. On the date of repossession, it is undisputed that Hillman's account was past due for September, October and November. Further, no claim for the outstanding payments had been submitted to the insurer. There was no evidence that GMAC behaved maliciously, or with conscious indifference to the consequences in repossessing the vehicle. The record shows no evidence of malicious intent or conscious indifference to the consequences, therefore summary judgment on the issue of punitive damages in favor of the defendant is entirely appropriate. See *Carter v. Meyers*, 204 Ga. App. 498 (419 SE2d 747) (1992).

The trial court concluded that a factual issue remained as to whether GMAC conducted the repossession in an improper manner. Nevertheless, we agree with the trial court's finding that there was inadequate evidence to support a punitive damages award. "Negligence, even gross negligence, is inadequate to support a punitive damage award. Under OCGA § 51-12-5.1 (b), which is applicable . . ., it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. . . . There is general agreement that, because it lacks this element, mere negligence is not enough. . . ." (Citations and punctuation omitted.) *Tower Fin. Svcs. v. Smith*, 204 Ga. App. 910, 918 (5) (423 SE2d 257) (1992). Construing the evidence most favorably for Hillman, the acts committed by GMAC simply did not warrant the imposition of punitive damages.

Our conclusion is not altered by *Ford Motor Credit Co. v. Spicer*, 144 Ga. App. 383 (3) (241 SE2d 273) (1977). Pretermitting the issue of the effect of OCGA § 51-12-5.1 on the outcome of that case, the factual circumstances of the case at hand are distinguishable. In *Ford Motor*, the award of punitive damages was affirmed because there was evidence that the plaintiff submitted payments on the installment contract, but that Ford Motor Credit Company continued to withhold plaintiff's automobile after learning of its own error. Thus, in *Ford Motor*, there was evidence that the repossession was malicious.

Similarly, *Maddox v. Brown*, supra; *Champion v. Martin*, 124 Ga. App. 275 (2) (183 SE2d 571) (1971), and *Hambrick v. Fidelity Acceptance Corp.*, 159 Ga. App. 540 (4) (284 SE2d 53) (1981), which

Hillman cites as support for allowing a claim of punitive damages in a case in which there is evidence of fraud, do not compel a different result from that reached by the trial court. As Hillman argues, those cases support the proposition that " 'the perpetration of a fraud is one of the specific reasons for allowance of punitive damages.' " *Maddox*, supra at 494. Nevertheless, we do not interpret this line of cases as mandating the allowance of punitive damages in every case in which fraud has been deemed an issue for the jury.

OCGA § 51-12-5.1 (b) provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Although there is no argument here by appellees that the denial of their motion for summary judgment on the fraud count was improper, we find that given the facts of this case, the trial court's conclusion that the punitive damages claim was insupportable was correct.

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

ON MOTION FOR RECONSIDERATION.

Hillman's motion for reconsideration contends that we erred in deciding that the trial court's grant of summary judgment as to the punitive damages claim was proper since the court had held that fraud was a jury issue.

We do not reach the issue Hillman argues of whether a claim of fraud which survives summary judgment mandates the allowance of punitive damages, because in this case the trial court should have granted summary judgment as to the fraud claim. We do not accept Hillman's argument that a jury could reasonably infer that GMAC's representations that late payment would be accepted and that her balance due need not be paid immediately were knowingly false when made and were made with the intent to deceive. Furthermore, we find no reasonable reliance in Hillman's behavior. The evidence of fraud was insufficient to withstand the motion for summary judgment, thus the grant of summary judgment on the claim for punitive damages was proper.

*Motion for reconsideration denied.*

DECIDED SEPTEMBER 23, 1993 —
RECONSIDERATION DENIED NOVEMBER 10, 1993

*Bondurant, Mixson & Elmore, Keenan R. S. Nix*, for appellant.

*McCullough & Pane, John G. McCullough*, for appellees.